Jonathan S. Henes, P.C.
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

Laura E. Krucks (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JASON INDUSTRIES, INC. *et al.,*[1] | ) | Case No. 20-22766 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## STATEMENT OF FINANCIAL AFFAIRS OF
## DEBTOR JASON INDUSTRIES, INC. (CASE NO. 20-22766)

---

[1]  The last four digits of the Debtors' tax identification numbers, if any, are:  Jason Industries, Inc. (8322); Jason Partners Holdings, Inc. (1977); Jason Holdings, Inc. I (9929); Jason Incorporated (6840); Milsco, LLC (7243); Osborn, LLC (5279); Schaffner Manufacturing Co., Inc. (0894); and Jason International Holdings, Inc. (7730). The location of the Debtors' service address for purposes of these chapter 11 cases is:  777 Westchester Avenue, Suite 101, White Plains, NY 10604.

Jonathan S. Henes, P.C.                          Laura E. Krucks (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)          **KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS LLP**                          **KIRKLAND & ELLIS INTERNATIONAL LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**            300 North LaSalle Street
601 Lexington Avenue                              Chicago, Illinois 60654
New York, New York 10022                          Telephone:     (312) 862-2000
Telephone:     (212) 446-4800                     Facsimile:     (312) 862-2200
Facsimile:     (212) 446-4900

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| JASON INDUSTRIES, INC. *et al.*,[1] | Case No. 20-22766 (RDD) |
| Debtors. | (Jointly Administered) |

**GLOBAL NOTES AND STATEMENT OF**
**LIMITATIONS, METHODOLOGY AND DISCLAIMERS**
**REGARDING THE DEBTORS' SCHEDULES OF ASSETS**
**AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Jason Industries, Inc. (at times referred to as the "Company" or "Jason") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases, (the "Debtors") have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure, and Rule 1007–1 of the Bankruptcy Local Rules for the Southern District of New York.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the

---

[1]   The last four digits of the Debtors' tax identification numbers, if any, are: Jason Industries, Inc. (8322); Jason Partners Holdings, Inc. (1977); Jason Holdings, Inc. I (9929); Jason Incorporated (6840); Milsco, LLC (7243); Osborn, LLC (5279); Schaffner Manufacturing Co., Inc. (0894); and Jason International Holdings, Inc. (7730). The location of the Debtors' service address for purposes of these chapter 11 cases is: 777 Westchester Avenue, Suite 101, White Plains, NY 10604.

avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event will the Debtors or their agents, attorneys and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and financial advisors are advised of the possibility of such damages.

Mr. Chad Paris, Chief Financial Officer of Jason Industries, Inc., has signed each set of the Schedules and Statements. Mr. Paris is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Paris has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Mr. Paris has not (and could not have) personally verified the accuracy of each such statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements. The Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[2] In the event that the Schedules and/or Statements differ from these Global Notes, the Global Notes control.

---

[2] These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

## Global Notes and Overview of Methodology

1.  **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, but inadvertent errors or omissions may exist.  The Debtors reserve all rights to: (i) amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim against a Debtor ("Claim")[3] is asserted; (ii) dispute or otherwise assert offsets or defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) subsequently designate any Claim as "disputed," "contingent," or "unliquidated;" or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated").  Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated."  Listing a Claim does not constitute an admission of liability by the Debtor against which the Claim is listed or against any of the Debtors.  Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, issues involving Claims, substantive consolidation, defenses, statuary or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.  Notwithstanding the foregoing, the Debtors shall not be required to update the Schedules and Statements

2.  **Description of Cases.**  On June 24, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 29, 2020, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 32].  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the close of business the day before the Petition Date.

3.  **Basis of Presentation.**  For financial reporting purposes, in the ordinary course prior to the Petition Date, the Debtors prepared financial statements that were consolidated by the Debtors ultimate parent, Jason Industries, Inc.  Combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that may be different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP").  Therefore, these Schedules and Statements

---

[3]  For the purposes of these Global Notes, the term Claim shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain assets and liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

4.   **No Admission**.  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

### General Disclosures Applicable to Schedules and Statements

1.   **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

2.   **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may have improperly characterized, classified, categorized, designated, or omitted certain items due to the complexity and size of the Debtors' business.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without

limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3.    **Claim Designations.**  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate. Listing a claim does not constitute an admission of liability by the Debtors.

4.    **Unliquidated Claim Amounts.**  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5.    **Undetermined Amounts.**  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6.    **Court Orders.**  Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases entered shortly after the Petition Date (collectively, the "<u>First Day Orders</u>"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, taxing authorities, insurance carriers, lienholders, foreign suppliers, claimants under section 503(b)(9) of the Bankruptcy Code, and accounts payable claims, among others on an interim basis.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements.   Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements.

7.    **Other Paid Claims.**  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

8.    **Valuation.**  In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors. Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values.  Market values may vary, at some times materially, from net book values. The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of their property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are

5

undetermined or unknown. Accordingly, unless otherwise indicated, net book values as of June 26, 2020 are reflected on the Schedules and Statements. Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

9.     **Liabilities.**  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

10.    **Excluded Assets and Liabilities.**  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals. In addition and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court. Additionally, certain immaterial assets and liabilities may have been excluded.

11.    **Confidential or Sensitive Information.**  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. The alterations will be limited to only what is necessary to protect the Debtor or third party.

12.    **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

13. **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases. To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.

14. **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties.  Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.  Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

15. **Intercompany Accounts**.  The Debtors regularly engage in business relationships and transactions with each other, including the payment or funding of certain operating expenses. These relationships, payments, and/or funding of expenses are usually, but not always, reflected as intercompany receivables, intercompany payables, or the combining of both to arrive at a net intercompany receivable or payable amount, *see Debtors' Motion For Entry of Interim and Final Orders Authorizing the Debtors to (I) Continue to Operate Their Cash Management System, Honor Certain Prepetition Obligations Related Thereto, and Maintain Existing Business Forms, (II) Honor Their Intercompany Transactions and Grant Superpriority Administrative Expense Status to Postpetition Intercompany Transactions, and (III) Granting Related Relief* [Docket No. 8] (the "Cash Management Motion").  The Debtors have elected to present intercompany amounts netted as described in the foregoing.

16. **Guarantees and Other Secondary Liability Claims**.  The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in each of their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  Thus, the Debtors reserve all of their rights to amend the Schedules to the extent that additional Guarantees are identified.

17. **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or

otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

18.    **Executory Contracts.**   Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G. The Debtors have excluded nondisclosure agreements entered into in connection with these chapter 11 cases to avoid any potential breach of such nondisclosure agreements.

19.    **Liens.**   The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment.

20.    **Estimates.**   To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

21.    **Fiscal Year.**   Each Debtor's fiscal year ends on or about December 31st.

22.    **Currency.**   Unless otherwise indicated, all amounts are reflected in U.S. dollars.

23.    **Property and Equipment.**   Unless otherwise indicated, owned property and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements on Schedule G. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

24.    **Claims of Third-Party Related Entities.**   While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's

affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

25. **Umbrella or Master Agreements.**  Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.  The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

26. **Credits and Adjustments.**  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

27. **Setoffs.**  The Debtors incur certain setoffs and other similar rights during the ordinary course of business.  Offsets in the ordinary course can result from various items, including, without limitation, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their suppliers.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.  Therefore, although such offsets and other similar rights may have been accounted for when certain amounts were included in the Schedules, offsets are not independently accounted for, and as such, are excluded from the Schedules.

In addition, the Debtors engage in several customer programs, including product returns, rebates, incentives, and discounts to customers in the ordinary course of business, and other programs pursuant to which customers may receive credits or make deductions from future payments.  These routine programs are consistent with the ordinary course of business in the Debtors' industry.  These programs can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document.  Additionally, the Bankruptcy Court, pursuant to that certain *Interim Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief* [Docket No. 37], authorized the Debtors to make payments and satisfy prepetition obligations related to these customer programs.  As such, these transactions were not considered setoffs for the purpose of responding to Question Six of the Statements, although the Debtors reserve all rights with respect thereto and make no admission or waiver thereby.

28. **Insiders.**  In the circumstance where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals who the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.

The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense

and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtors; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtors; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (2) any other purpose.

29.    **Payments.**    The financial affairs and business of the Debtors are complex. Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System"), as described in the Cash Management Motion. Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

30.    **Totals.**    All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

31.    **COVID-19.**    The Debtors have filed these Schedules and Statements amidst the unprecedented circumstances arising from the global COVID-19 pandemic. Although the Debtors have not (and could not have) assessed the impact of these challenges, such circumstances may impact the Debtors' businesses and the disclosures contained herein.

### Specific Schedules Disclosures.

1.    **Specific Notes Regarding Schedule A/B.**

    (a)    **Schedule A/B, Parts 1 and 2 – Cash and Cash Equivalents; Deposits and Prepayments.**    Details with respect to the Debtors' cash management system and bank accounts are provided in the Cash Management Motion and any orders of the Bankruptcy Court granting the Cash Management Motion [Docket Nos. 8, 43].

    Additionally, the Debtors have requested, pursuant to that certain *Motion Seeking Entry of an Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief* [Docket No. 12], authorization to provide adequate assurance of payment for future utility services, including an initial deposit in the amount of $112,366. Some of the

deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

**(b)**      **Schedule A/B, Part 3 – Checking, savings, or other financial accounts, CDs, etc.** Schedule A/B-3 lists actual cash balances as of June 26, 2020.  In addition, Schedule A/B, Part 3 identifies the net accounts receivable balance as of June 26, 2020.

**(c)**      **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.**  Ownership interests in subsidiaries and affiliates have been listed in Schedule A/B, Part 4 as undetermined.  The Debtors make no representation as to the value of their ownership of each subsidiary as the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

**(d)**      **Schedule A/B, Part 7 – Deposits.**  The Debtors are required to make deposits from time to time with various vendors, landlords, and service providers in the ordinary course of business. The Debtors have exercised reasonable efforts to report the current value of any deposits. The Debtors may have inadvertently omitted deposits and conversely may have reported deposits that are no longer outstanding. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if deposits are incorrectly identified.

**(a)**      **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.**  Dollar amounts are presented net of accumulated depreciation and other adjustments.  Because of the large number of furniture, fixtures, and equipment, as well as the difficulty of listing out every one of these assets, these items are listed as group line items.  The Debtors may lease furniture, fixtures, and equipment from certain third party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

**(b)**      **Schedule A/B Part 8 – Prepayments.**  The Debtors are required to make prepayments from time to time with various vendors, landlords, and service providers as part of the ordinary course of business. The Debtors have exercised reasonable efforts to identify any prepayments. The Debtors may have inadvertently omitted certain prepayments and conversely may have reported prepayments for which services have already been provided. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if prepayments are incorrectly identified.

**(c)**      **Schedule A/B, Part 9 – Real Property.**  Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of

11

such documents, the Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors have only listed such agreements on Schedule G.

(d)     **Schedule A/B, Part 10 – Intangibles and Intellectual Property.**  The Debtors review goodwill and other intangible assets having indefinite lives for impairment annually or when events or changes in circumstances indicate the carrying value of these assets might exceed their current fair values.  The Debtors report intellectual property assets as net book value based on the Debtors' books and records whenever applicable.  Values are listed as unknown or undetermined where appropriate.

(e)     **Schedule A/B, Part 11 – All Other Assets.**  Dollar amounts are presented net of impairments and other adjustments.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.*  In the ordinary course of business, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

*Interests in Insurance Policies or Annuities.*  The Debtors maintain a variety of insurance policies including property, general liability, and workers' compensation policies and other employee related policies. A list of the Debtors insurance policies and related information is available in the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Their Prepetition Insurance Coverage and Surety Bonds, (B) Satisfy Prepetition Obligations Related Thereto, (C) Renew, Supplement, and Enter Into New Insurance Policies and Surety Bonds, (D) Honor the Terms of the Financing Agreement and Pay Premiums Thereunder, and (E) Continue to Pay Brokerage Fees, and (II) Granting Related Relief* [Docket No. 10]. The Debtors believe that there is little or no cash value to the vast majority of such insurance policies.  Accordingly, such policies are not listed on Schedule A/B, Part 11.  To the extent an insurance policy is determined to have value, it will be included in Schedule A/B.

*Pension Liabilities*.  Jason Industries, Inc. accounts for its pension assets and liabilities on a consolidated basis.  As such, the Debtors' pension assets and liabilities should be analyzed on an aggregated basis with their Co-Debtors' pension assets and liabilities.

2.    **Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Bankruptcy Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.  Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien.  Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently omitted to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.  Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the Debtors' prepetition secured credit facility and other funded secured indebtedness, only the administrative agents have been listed for purposes of Schedule D.  The amounts reflected outstanding under the Debtors' prepetition funded indebtedness reflect approximate amounts as of the Petition Date.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Chad M. Paris (I) in Support of Chapter 11 Petitions and First Day Motions and (II) Pursuant to Local Rule 1007-2* [Docket No. 25] (the "First Day Declaration").

3.    **Specific Notes Regarding Schedule E/F**

(a)    **Creditors Holding Priority Unsecured Claims.** The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and/or the priority status of any claim on any basis at any time.

Pursuant to the *Interim Order (A) Authorizing the Debtors to (I) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (II) Continue Employee Benefits Programs, and (B) Granting Related Relief* [Docket No. 40] (the "Employee Wage Order"), the Bankruptcy Court granted the Debtors authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtors believe that any non-insider employee claims for prepetition

amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, have been or will be satisfied, and such satisfied amounts are not listed. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

Pursuant to the *Interim Order (I) Authorizing the Payment of Certain Prepetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 39] (the "Tax Order"), the Bankruptcy Court granted the Debtors authority to pay, in their discretion, certain tax liabilities and regulatory fees that accrued prepetition. While the Debtors' believe they have, or will resolve all of the known, prepetition amounts owed to the various tax and regulatory agencies under the authority granted under the Tax Order, in an effort to identify, and resolve, any unknown tax or regulatory claims, the Debtors' have listed all of their historical tax and regulatory agencies on schedule E/F as contingent, unliquidated, and disputed.

(b)     **Schedule E/F - Trade Payables.** Trade Payables listed on Schedule E/F contain the prepetition liability information available to the Debtors as of the date of filing and include invoices that were paid subsequent to the Petition Date related to prepetition obligations pursuant to the *Interim Order (I) Authorizing Debtors to Pay Certain Prepetition Accounts Payable Claims in the Ordinary Course of Business, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief* [Docket No. 46].

(c)     **Creditors Holding Nonpriority Unsecured Claims.** The Debtors have used their reasonable best efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding potential and pending litigation involving the Debtors. In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F. Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

**Unsecured Debt**. Jason Industries, Inc. accounts for its pension assets and liabilities on a consolidated basis. As such, the Debtors' pension assets and liabilities should be analyzed on an aggregated basis with their Co-Debtors' pension assets and liabilities.

4.    **Specific Notes Regarding Schedule G**

(a)    **Executory Contracts and Unexpired Leases.** While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts at each of the Debtors, and although commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or over inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory

15

contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G. To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication.  Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and atonement agreements, supplemental agreements, amendments/letter agreements, title agreements, and confidentiality agreements.  Such documents also are not set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary.  Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.  The presence of a contract or

agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements are not listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

In the ordinary course of business, the Debtors may have entered into confidentiality agreements which, to the extent that such confidentiality agreements constitute executory contracts, are not listed individually on Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.

The Debtors included all active insurance policies on Schedule G, and listing the insurance policies on Schedule G is not indicative of the Debtors' opinion of the executory nature of the listed policies pursuant to section 365 of the Bankruptcy Code. The insurance policies are included on Schedule G to ensure that such insurance policies are disclosed in the event they are determined to be executory subject to section 365 of the Bankruptcy Code. The Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice of claims and cooperation with insurers.

In addition, Schedule G does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

Certain of the agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors. Additionally, the specific Debtor obligor(s) to certain of the agreements could not be specifically ascertained in every circumstance. In such cases, the Debtors have made reasonable efforts to identify the correct Debtors' Schedule G on which to list the agreement and, where a contract party remained uncertain, such agreements may have been listed on a different Debtor's Schedule G.

17

5.    **Specific Notes Regarding Schedule H**

(a)    **Co-Debtors**.  In the ordinary course of their business, the Debtors pay certain expenses that are on behalf of their subsidiaries.  The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable.  Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions.  These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties.  Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H.  However, some such claims may be listed elsewhere in the Schedules and Statements.

Due to their voluminous nature, and to avoid unnecessary duplication, the Debtors have excluded debts that more than one Debtor may be liable for on Schedule H because such debts are otherwise reflected on Schedules D, E/F, or G for each Debtor.

**Specific Statements Disclosures**.

(a)    **Question 1 – Gross Revenue.**  The debtors have included intercompany sales in gross revenue in response to Question 1.

(b)    **Questions 3, 4, and 30 – Payments to Certain Creditors.**  Prior to the Petition Date, the Debtors maintained a centralized cash management system through which certain Debtors made payments on behalf of certain Debtor affiliates as further explained in the Cash Management Motion.  Consequently, most, if not all, payments to creditors and insiders listed in response to Questions 3, 4, and 30 on each of the Debtors' Statements reflect payments made by Jason or one of its Debtor affiliates from operating bank accounts (the "Operating Accounts"), on behalf of the corresponding Debtor, pursuant to the Debtors' cash management system described in the Cash Management Motion.  The Debtors have excluded ordinary course intercompany Debtor-to-Debtor transfers from their response to Question 4.

The Debtors have responded to Question 3 in detailed format by creditor. The response, however, does not include transfers to bankruptcy professionals (which transfers appear in response to Part 6, Question 11) or ordinary course compensation of individuals through salaries, wages, or related allowances.

The Debtors have responded to Questions 4 and 30 in detailed format by insider in the attachment for Question 4.  To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date, but later resigned their insider status or (ii) did not begin the year as an insider, but later became an insider, the Debtors have listed in response to Question 4 all payments made during the 12-month period, irrespective of when such person was defined as an insider.

The dates recorded for the vesting of employee restricted stock units may differ from the actual vesting date given that the employee restricted stock units are shown as recorded on the dates of the payrolls within which the income was recorded.

(c)     **Question 6 – Setoffs.**  For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 28 of these Global Notes.

**Question 11 – Payments Made Related to Bankruptcy.** The response to Question 11 identifies the Debtor that made a payment in respect of professionals the Debtors have retained or will seek to retain under section 327 and section 363 of the Bankruptcy Code.  Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications, motions, and related orders.  Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Question 11 may include payments for professional services unrelated to bankruptcy.

(d)     **Question 16 – Personally Identifiable Information.**  In the ordinary course of the Debtors' businesses, certain of the Debtors collect and retain certain personally identifiable information of their customers, including, but not limited to, names, addresses, email addresses, and certain payment information. Such information is subject to the Debtors' privacy policy regarding personally identifiable information.

(e)     **Questions 22-24 – Details About Environmental Information.**  The Debtors historically have operated over a substantial period of time at various locations.  At some locations, the Debtors may no longer have active operations and may no longer have relevant records, or the records may no longer be complete or reasonably accessible or reviewable.  In some cases, statutory document retention periods have passed.  Further, some individuals who once possessed responsive information may no longer be employed by the Debtors. For all these reasons, it may not be reasonably possible to identify and supply all of the requested information that is responsive to Questions 22-24. The Debtors have made commercially reasonable efforts to provide responsive information.  The Debtors acknowledge the possibility that information related to proceedings, governmental notices and reported releases of hazardous materials responsive to Questions 22-24 may be discovered subsequent to the filing of the Schedules and Statements.  The Debtors reserve the right to supplement or amend this response in the future if additional information becomes available.

This response does not include sites or proceedings related to non-environmental laws, such as occupational safety and health laws or transportation laws. This response is also limited to identifying circumstances in which governmental agencies have alleged in writing that particular operations of the Debtors are in violation of environmental laws and proceedings that have resulted from alleged violations of environmental laws. This response also does not cover: (i) periodic information requests, investigations or inspections from governmental units concerning compliance with environmental laws; or (ii) routine reports and submissions concerning permitted discharges resulting from routine operations where such reports and submissions were made in compliance with regulatory requirements.

(f)     **Question 26 – Books, Records, and Financial Statements.**  Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, Jason has filed with the U.S. Securities and Exchange Commission (the "SEC") reports on Form 8-K, Form 10-Q, and Form 10-K. These SEC filings contain consolidated financial information relating to the Debtors and Non-Debtors. Jason has not filed any financial information specifically related to the Debtors either individually or on a combined or consolidated basis. Additionally, consolidated financial information for the Debtors is posted on the company's website at https://investors.jasoninc.com/sec-filings. In addition, the Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements that may not be part of a public filing. The Debtors do not maintain complete lists or other records tracking such disclosures. Therefore, the Debtors have not provided lists of these parties in their Responses to Statement Question 26.

(g)     **Question 27 – Inventories.**  The Debtors' employees routinely perform physical inventory counts and cycle counts in the ordinary course of business.

(h)     **Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders.**  Distributions by the Debtors to their directors and officers are listed on the attachment to Question 4. Certain directors and executive officers of Debtor Jason Industries, Inc. are also directors and executive officers of certain of the other Debtors and non-Debtor affiliates. Such individuals are only compensated for services rendered to Jason on a consolidated basis, so to the extent payments to such individuals are not listed in the response to Question 4 on the Statements for such Debtor affiliates, they did not receive payment from the Debtors for their services as directors or executive officers of these entities. Certain of the Debtors' directors and executive officers received distributions net of tax withholdings in the year preceding the Petition Date. The amounts listed under Question 4 reflect the gross amounts paid to such directors and officers rather than the net amounts after deducting for tax withholdings.

*     *     *     *     *

**JASON INDUSTRIES, INC.**                                                      **Case Number:**        **20-22766**

| Part 1: | Income |
|---------|--------|

## 1. Gross Revenue from business

☑ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | ☐ Operating a business<br>☐ Other _____ | _____ |

**JASON INDUSTRIES, INC.**                                    **Case Number:**          **20-22766**

| Part 1: | Income |
|---------|--------|

## 2. Non-business revenue

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| From _____ to _____<br>MM/DD/YYYY    MM/DD/YYYY | _____ | _____ |

**JASON INDUSTRIES, INC.**                                           Case Number:         **20-22766**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1    NONE | | | ☐ Secured debt<br>☐ Unsecured loan repayment<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | **TOTAL** | $0 | |

|  | **TOTAL** | $0 |
|---|---|---|

**JASON INDUSTRIES, INC.**                                   Case Number:          **20-22766**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

### 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|---|---|---|---|---|
| 4.1 | HEFFERNAN, JAMES<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $15,750 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $15,750 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $15,750 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $15,750 | DIRECTOR COMPENSATION |
| | **TOTAL HEFFERNAN, JAMES** | | **$63,000** | |
| 4.2 | HYMAN, JAMES<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $15,250 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $15,250 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $15,250 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $15,250 | DIRECTOR COMPENSATION |
| | **TOTAL HYMAN, JAMES** | | **$61,000** | |
| 4.3 | LAMPEREUR, ANDREW<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $13,000 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $13,000 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $13,000 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $13,000 | DIRECTOR COMPENSATION |
| | **TOTAL LAMPEREUR, ANDREW** | | **$52,000** | |
| 4.4 | OBUS, NELSON<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $12,500 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $12,500 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $12,500 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $12,500 | DIRECTOR COMPENSATION |
| | **TOTAL OBUS, NELSON** | | **$50,000** | |

**JASON INDUSTRIES, INC.**                                    Case Number:        20-22766

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None

| | Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|---|---|---|---|---|
| 4.5 | QUAIN, MITCHELL<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $13,750 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $13,750 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $13,750 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $13,750 | DIRECTOR COMPENSATION |
| | TOTAL QUAIN, MITCHELL | | **$55,000** | |
| 4.6 | QUINN, JEFFRY<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $11,250 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $11,250 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $11,250 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $11,250 | DIRECTOR COMPENSATION |
| | TOTAL QUINN, JEFFRY | | **$45,000** | |
| 4.7 | SULLIVAN, JAMES<br>DIRECTOR<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | 7/5/2019 | $16,250 | DIRECTOR COMPENSATION |
| | | 10/4/2019 | $16,250 | DIRECTOR COMPENSATION |
| | | 1/10/2020 | $16,250 | DIRECTOR COMPENSATION |
| | | 4/2/2020 | $16,250 | DIRECTOR COMPENSATION |
| | TOTAL SULLIVAN, JAMES | | **$65,000** | |
| | TOTAL | | **$391,000** | |

**JASON INDUSTRIES, INC.**                                        **Case Number:**        **20-22766**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
|-----------------------------|----------------------------|-----------------------|-------------------|
| 5.1    NONE |  |  | $0 |

|  |  |  | **TOTAL** | **$0** |

**JASON INDUSTRIES, INC.**                                   **Case Number:**       **20-22766**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|---|---|---|---|---|
| 6.1 NONE | | | | $0 |

|  |  | | | **TOTAL** | **$0** |

**JASON INDUSTRIES, INC.**                                    **Case Number:**    **20-22766**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

## 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☐ None

| | Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|---|
| 7.1 | MATTER INVOLVING THE SECURITES AND EXCHANGE COMMISSION | SUBPOENA | U.S. SECURITIES AND EXCHANGE COMMISSION 100 F STREET, NE, WASHIGNTON, DC 20549-0213, USA | PENDING |

**JASON INDUSTRIES, INC.**                                                                    **Case Number:**    **20-22766**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

### 8. Assignments and receivership

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|------------------------|------|-------------------------|-------|
| 8.1    NONE | | | | | UNDETERMINED |

**JASON INDUSTRIES, INC.**                                                              **Case Number:**        **20-22766**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|------------------------------|-----------------------------------|-------------------------------------------|-------------|-------|

9.1    NONE

**JASON INDUSTRIES, INC.**

**Case Number:**    **20-22766**

| Part 5: | Certain Losses |
|---------|----------------|

## 10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|---|---|---|---|---|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |
| 10.1    NONE | | | | Undetermined |

**TOTAL**    **Undetermined**

**JASON INDUSTRIES, INC.**                                                      **Case Number:**      **20-22766**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

## 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**JASON INDUSTRIES, INC.**                                      Case Number:        **20-22766**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 12. Self-settled trusts of which the debtor is a beneficiary

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years
before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|-------------------------|---------|-----------------------------------|---------------------------|----------------------|
| 12.1    NONE | | | | $0 |

**JASON INDUSTRIES, INC.**                                    **Case Number:**        **20-22766**

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

### 13. Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☑ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13.1   NONE | | | $0 |

|  |  | **TOTAL** | **$0** |
|---|---|---|---|

**JASON INDUSTRIES, INC.**                                    **Case Number:**        **20-22766**

| **Part 7:** | Previous Locations |
| --- | --- |

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of Occupancy |
| --- | --- |
| 14.1    NONE | From: _____ To: _____ |

**JASON INDUSTRIES, INC.**                                    **Case Number:**        **20-22766**

| Part 8: | Health Care Bankruptcies |
| --- | --- |

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
| --- | --- | --- | --- | --- |
| 15.1    NONE | | | | ☐ Electronic<br>☐ Paper |

**JASON INDUSTRIES, INC.**                                    **Case Number:**        **20-22766**

| Part 9: | Personally Identifiable Information |
| --- | --- |

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

    Does the debtor have a privacy policy about that information?

    ☐ No

    ☐ Yes

**JASON INDUSTRIES, INC.**                                    **Case Number:**        **20-22766**

| **Part 9:** | **Personally Identifiable Information** |

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☐ Yes.  Fill in below:

Describe: _____        EIN: _____

Has the plan been terminated?
☐ No
☐ Yes

**JASON INDUSTRIES, INC.**                                                      Case Number:        **20-22766**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1    NONE | | | | |

**JASON INDUSTRIES, INC.**                                        Case Number:        **20-22766**

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
|---|---|

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☐ None

| | Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 19.1 | JPMORGAN CHASE BANK, N.A.<br>1 CHASE MANHATTAN PLAZA<br>NEW YORK, NY 10005 | KEVIN KUZNICKI<br>JASON INDUSTRIES, INC.<br>411 E. WISCONSIN AVE., STE 2100<br>MILWAUKEE, WI 53202-4461 | SAFE DEPOSIT BOX TO HOLD THE PHYSICAL SHARE CERTIFICATE OF JASON PARTNERS SOLDING INC, WHICH IS 100% OWNED BY JASON INDUSTRIES, INC. | ☐ No<br>☑ Yes |

**JASON INDUSTRIES, INC.**                                          Case Number:          **20-22766**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20.1    NONE | | | | ☐ No<br>☐ Yes |

**JASON INDUSTRIES, INC.**                                        **Case Number:**        **20-22766**

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

### 21. Property held for another

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1    NONE | | | |

**JASON INDUSTRIES, INC.**                                                        **Case Number:**        **20-22766**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Provide details below.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|
| 22. 1   NONE | | | |

**JASON INDUSTRIES, INC.**                                                                  **Case Number:**    **20-22766**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☐ No
☑ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23.1  CONOVER<br>1715 CONOVER BOULEVARD EAST<br>CONOVER, NC 28613 | NORTH CAROLINA DEPT. OF ENVIRONMENTAL QUALITY<br>217 W JONES ST<br>RALEIGH, NC 27603 | NORTH CAROLINA DEPT. OF ENVIRONMENTAL QUALITY<br>NOTICE OF REGULATORY REQUIREMENTS | 1/10/2020 |

**JASON INDUSTRIES, INC.**                                                                    **Case Number:**      **20-22766**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 24.1   NONE | | | |

**JASON INDUSTRIES, INC.**    **Case Number:**    **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| 25.1   DRONCO GMBH<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING AND HOLDING COMPANY - FINISHING | | - |
| 25.2   HSIN FENG CHEMICAL CORPORATION<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | JOINT VENTURE OPERATING COMPANY - FINISHING | | - |
| 25.3   JACKSONLEA (JIANGMEN) POLISHING MATERIALS CO. LTD.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DISTRIBUTION COMPANY - FINISHING | | - |
| 25.4   JACKSONLEA DE MEXICO S. DE R.L. DE C.V.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | | - |
| 25.5   JANESVILLE DE MEXICO, S.A. DE C.V.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY | | -   8/12/2019 |
| 25.6   JANESVILLE, LLC<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY | | -   8/12/2019 |
| 25.7   JASON ASIA HOLDINGS PTE. LTD.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | JOINT VENTURE OPERATING COMPANY - FINISHING | | - |
| 25.8   JASON DM, S. DE R.L. DE C.V.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY | | -   12/31/2019 |
| 25.9   JASON HOLDING GMBH<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | | - |
| 25.10  JASON HOLDINGS, INC. I<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | 13-4099929 | - |

**JASON INDUSTRIES, INC.**                                                    **Case Number:**    **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| 25.11  JASON INCORPORATED<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | 39-1756840 | - |
| 25.12  JASON INDUSTRIES IRELAND, LTD.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DISTRIBUTION COMPANY - FINISHING | | - |
| 25.13  JASON INTERNATIONAL HOLDINGS, INC.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | 75-3027730 | - |
| 25.14  JASON MILWAUKEE IRELAND LTD<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | | - |
| 25.15  JASON OHIO, LLC<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY | | -    8/12/2019 |
| 25.16  JASON PARTNERS HOLDINGS INC.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | 27-3361977 | - |
| 25.17  JHDM, S. DE R.L. DE C.V.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | | -    12/31/2019 |
| 25.18  LEA (HONG KONG) INTERNATIONAL LTD.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | HOLDING COMPANY | | - |
| 25.19  METALEX, LLC<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY | 36-0389791 | -    12/31/2019 |
| 25.20  MILSCO DE MEXICO S. DE R.L. DE C.V.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | JOINT VENTURE OPERATING COMPANY - FINISHING | | - |

**JASON INDUSTRIES, INC.**  Case Number:  **20-22766**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

## 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| 25.21 MILSCO, LLC<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - SEATING | 83-0897243 | - |
| 25.22 OSBORN GMBH<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | JOINT VENTURE HOLDING COMPANY | | - |
| 25.23 OSBORN INTERNATIONAL AB (SWEDEN)<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - SEATING | | - |
| 25.24 OSBORN INTERNATIONAL LTDA<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | | - |
| 25.25 OSBORN INTERNATIONAL SRL (ROMANIA)<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DISTRIBUTION COMPANY - FINISHING | | - |
| 25.26 OSBORN LIPPERT PVT. LTD.<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | INACTIVE | | - |
| 25.27 OSBORN SINGAPORE PTE. LTD<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | LLC ESTABLISHED FOR REAL ESTATE TRANSACTION | | - |
| 25.28 OSBORN, LLC<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | 83-0905279 | - |
| 25.29 OSBORN-UNIPOL LDA (PORTUGAL)<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING AND SEATING, AND SHARED SERVICES | | - |
| 25.30 OSBORN-UNIPOL S.L. (SPAIN)<br>833 EAST MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | | - |

**JASON INDUSTRIES, INC.**                                    Case Number:        **20-22766**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 25. Other businesses in which the debtor has or has had an interest

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| 25.31 OSBORN-UNIPOL SAS (FRANCE) 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | OPERATING COMPANY - FINISHING | | - |
| 25.32 OSBORN-UNIPOL UK LTD 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | DISTRIBUTION COMPANY - FINISHING | | - |
| 25.33 SCHAFFNER MANUFACTURING CO., INC. 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | OPERATING COMPANY - POLISHING | 25-0950894 | - |
| 25.34 SERVICIOS ADMINISTRATIVOS JDM, S. DE R.L. 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | OPERATING COMPANY | | - 8/12/2019 |
| 25.35 SHANGHAI JACKSONLEA POLISHING MATERIALS CO. LTD. 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | JOINT VENTURE OPERATING COMPANY - FINISHING | | - |
| 25.36 STAGECOACH ACQUISITION, LLC 833 EAST MICHIGAN STREET SUITE 900 MILWAUKEE, WI 53202 | LLC ESTABLISHED FOR REAL ESTATE TRANSACTION | | - |

**JASON INDUSTRIES, INC.**                                        **Case Number:**            **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☑ None

| Name and Address | | Dates of Service |
|------------------|--|------------------|
| 26a.1    NONE | | From:          To: |

**JASON INDUSTRIES, INC.**                                    Case Number:          **20-22766**

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | Dates of Service | | |
|---|---|---|---|
| 26b.1   DELOITTE & TOUCHE LLP<br>555 E WELLS ST<br>SUITE 1400<br>MILWAUKEE, WI 53202 | From: | 3/8/2019 | To: |
| 26b.2   PRICEWATERHOUSECOOPERS LLP<br>ONE NORTH WACKER<br>CHICAGO, IL 60606 | From: | 3/6/2014 | To:   3/7/2019 |

**JASON INDUSTRIES, INC.**                                      **Case Number:**          **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☑ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1    NONE | |

**JASON INDUSTRIES, INC.**                                               Case Number:          **20-22766**

---

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

---

### 26. Books, records, and financial statements

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and Address |
|---|
| 26d.1    SECURITIES AND EXCHANGE COMMISSION<br>100 F STREET, NE<br>WASHINGTON, DC 20549-0213 |

**Specific Notes**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, at the end of each of its fiscal quarters and years and upon the occurrence of significant events, Jason Industries, Inc. prepares and files with the SEC Form 10-Q Quarterly Reports, Form 10-K Annual Reports, and Form 8K Special Reports (collectively, the "SEC Filings"). The SEC Filings contain consolidated financial information relating to the Debtor and its affiliates. Additionally, the Debtors have historically provided information such as annual reports on their website. Because the SEC Filings and other reports are of public record, the Debtor does not maintain records of the parties who requested or obtained copies of any of the SEC Filings from the SEC, the Debtor or other sources.

**JASON INDUSTRIES, INC.**                                              Case Number:          **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1  NONE | | | | |

**JASON INDUSTRIES, INC.**                                              Case Number:    **20-22766**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1 FIELDS, TIMM<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | SVP & GM - ENGINEERED COMPONENTS | |
| 28.2 HEFFERNAN, JAMES<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.3 HENGEL, JOHN<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | VP - FINANCE, TREASURY, ASSISTANT SECRETARY | |
| 28.4 HYMAN, JAMES<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.5 KOBYLINSKI, BRIAN<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR & CEO | |
| 28.6 KUZNICKI, KEVIN<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | SVP, GENERAL COUNSEL & SECRETARY | |
| 28.7 LAMPEREUR, ANDREW<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.8 OBUS, NELSON<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.9 PARIS, CHAD<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | SVP & CFO | |
| 28.10 QUAIN, MITCHELL<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.11 QUINN, JEFFRY<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |
| 28.12 SULLIVAN, JAMES<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | DIRECTOR | |

**JASON INDUSTRIES, INC.**                                                          **Case Number:**          **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Posititfor and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.13 WALZ, KEITH<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | SVP & GM - INDUSTRIAL | |
| 28.14 WYNNEFIELD CAPITAL INC<br>450 SEVENTH AVE<br>SUITE 509<br>NEW YORK, NY 10123 | OWNERSHIP INTEREST | 17.98% |

**JASON INDUSTRIES, INC.**                                    Case Number:        **20-22766**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29.1  PRASAD, SRIVAS<br>833 E MICHIGAN STREET<br>SUITE 900<br>MILWAUKEE, WI 53202 | VP & GM - ACOUSTICS | From:  2/27/2006   To:  9/28/2019 |

**JASON INDUSTRIES, INC.**                                    Case Number:        20-22766

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30. Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No
☐ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|
| 30.1   NONE | | | |
| **TOTAL** | **$0** | | |
| **TOTAL** | **$0** | | |

**Specific Notes**

For information related to payments and transfers to insiders, please refer to SOFA # 4.

JASON INDUSTRIES, INC.                                                          Case Number:          20-22766

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No
☐ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. 1   NONE | EIN: |

**JASON INDUSTRIES, INC.**                                          **Case Number:**        **20-22766**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32. 1    NONE | EIN: |

**JASON INDUSTRIES, INC.**                                        Case Number:        20-22766

| Part 14: | Signature and Declaration |
|---|---|

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  _7/22/2020_

Signature:  /s/  _Chad M. Paris_          ,  _Chad Paris, SVP, CFO_
                                                  **Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X]  No
[ ]  Yes