**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JASON INDUSTRIES, INC. *et al.,*[1] | ) | Case No. 20-22766 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT FOR
AND CONFIRMING THE JOINT PREPACKAGED PLAN OF
REORGANIZATION OF JASON INDUSTRIES, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:

    a.      distributed, on or about June 24, 2020, to Holders of Claims entitled to vote to accept or reject the Plan (as defined herein): (i) the *Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 22] (as the same may have been modified, supplemented, and amended, including as set forth in Exhibit A hereto, the "Plan");[2] (ii) the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 23] (the "Disclosure Statement");

---

[1]     The last four digits of the Debtors' tax identification numbers, if any, are: Jason Industries, Inc. (8322); Jason Partners Holdings, Inc. (1977); Jason Holdings, Inc. I (9929); Jason Incorporated (6840); Milsco, LLC (7243); Osborn, LLC (5279); Schaffner Manufacturing Co., Inc. (0894); and Jason International Holdings, Inc. (7730). The location of the Debtors' service address for purposes of these chapter 11 cases is: 777 Westchester Avenue, Suite 101, White Plains, NY 10604.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

(iii) ballots for voting on the Plan (the "Ballots"); and (iv) the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines* (the "Combined Hearing Notice"), which provided a brief summary of the Plan;

b.      solicited votes on the Plan, beginning on or about June 24, 2020 through July 31, 2020, by serving copies of the Plan, Disclosure Statement, and Ballots for voting to accept or reject the Plan to those Holders of Claims entitled to vote on the Plan in accordance with the terms of chapter 11 of the Bankruptcy Code, the Bankruptcy Rules, the *Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, as amended, effective October 21, 2019 (as adopted by General Order M-387) (the "Guidelines"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules");

c.      commenced, on June 24, 2020 (the "Petition Date"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

d.      filed,[3] on the Petition Date, the Plan and the Disclosure Statement;

e.      filed, on the Petition Date, the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Directing that a Meeting of Creditors Not Be Convened, (VI) Waiving the Requirement of Filing Schedules and Statements, and (VII) Granting Related Relief* [Docket No. 24];

f.      filed, on the Petition Date, the *Declaration of Chad M. Paris (I) in Support of Chapter 11 Petitions and First Day Pleadings and (II) Pursuant to Local Bankruptcy Rule 1007-2* [Docket No. 25] (the "First Day Declaration");

g.      filed, on June 26, 2020, the *Affidavit of Service of Solicitation Materials* [Docket No. 31];

h.      filed, on July 1, 2020, the *Notice of Telephonic Second Day Hearing to be Held on July 22, 2020, at 2:00 P.M. (Prevailing Eastern Time)* [Docket No. 48];

---

[3]   Unless otherwise indicated, use of the term "filed" in this Confirmation Order refers also to the service of the applicable document filed on the docket for Case No. 20-22766.

i.      filed on July 2, 2020 the *Affidavit of Service of the Notice of Second Day and Confirmation Hearing to be Held on July 22, 2020, at 2:00 p.m. (E.T.)* [Docket No. 52];

j.      filed, on July 9, 2020, the *Notice of Dates and Deadlines* [Docket No. 61], which details the dates and deadlines set by the Court pursuant to the Scheduling Order (as defined herein);

k.      published, on July 14, 2020, in each of *Milwaukee Journal Sentinel* and the *New York Times (National Edition)*, notice of the date and time set for the hearing to consider approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing"), as evidenced by the Affidavits of Publication, filed on July 15, 2020 [Docket Nos. 63, 64] (together, the "Affidavits of Publication");

l.      filed on July 17, 2020 and July 23, 2020, the *Affidavit of Service* and *Supplemental Affidavit of Service* evidencing the service of the Combined Hearing Notice [Docket Nos. 77, 120] (together with the Affidavits of Publication, the "Affidavits");

m.      filed, on July 29, 2020, the *Notice of Immaterial Modification of the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 139], with a modified version of the Plan, dated August 25, 2020 attached as Exhibit A thereto;

n.      filed, on July 29, 2020, the *Notice of Immaterial Modification of the Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 140], with a modified version of the Disclosure Statement attached as Exhibit A thereto;

o.      filed, on July 29, 2020 and August 14, 2020, the plan supplements to the Plan [Docket Nos. 144, 199] (collectively, and as modified, supplemented, or otherwise amended from time to time, the "Plan Supplement");

p.      filed, on August 4, 2020, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 158] (the "Initial Voting Certification") and, on August 25, 2020, the *Amended Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 219] (together with the Initial Voting Certification, the "Voting Certification"), which details the results of the Plan voting process and, among other things, certifies that, as of the voting deadline, 100% in amount and 100% in number of Holders of Claims in Class 3, 100% in amount and 100% in number of Holders of Claims in Class 4, and 85.70% in

3

amount and 71.43% in number of Holders of Claims in Class 5 entitled to vote on the Plan voted to accept the Plan;

q.   filed, on August 10, 2020:  (i) the *Declaration of Rebecca Roof in Support of Confirmation of the Joint Prepackaged Plan of Reorganization* [Docket No. 172] (the "Roof Declaration");  (ii) the *Declaration of Chad Paris in Support of Confirmation of the Joint Prepackaged Plan of Reorganization* [Docket No. 175] (the "Paris Declaration");  (iii) the *Declaration of Jeffrey Kopa in Support of Confirmation of the Joint Prepackaged Plan of Reorganization* [Docket No. 171] (the "First Kopa Declaration"); and (iv) the *Declaration of Zul Jamal in Support of Confirmation of the Joint Prepackaged Plan of Reorganization* [Docket No. 176] (the "First Jamal Declaration");

r.   filed, on August 11, 2020, the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 183] (the "Confirmation Brief");

s.   filed, on August 14, 2020, the *Supplemental Declaration of Jeffrey Kopa in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 197] (together with the First Kopa Declaration, the "Kopa Declaration") and the *Supplemental Declaration of Zul Jamal in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 196] (together with the First Jamal Declaration, the "Jamal Declaration");

t.   filed, on August 17, 2020, the Plan, as modified [Docket No. 208]; and

u.   operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The United States Bankruptcy Court for the Southern District of New York (the "Court") having:

a.   entered, on July 2, 2020, the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing Plan and Disclosure Statement Objection and Reply Deadlines and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Directing that a Meeting of Creditors not be Convened, (VI) Extending the Deadline to File Schedules and Statements and (VII) Granting Related Relief* [Docket No. 51] (the "Scheduling Order");

4

b.     reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Plan Supplement, the First Day Declaration, the Roof Declaration, the Paris Declaration, the Kopa Declaration, the Jamal Declaration, the Voting Certification, and all other pleadings, exhibits, statements, affidavits, declarations, and comments regarding Confirmation of the Plan that were filed with the Court, including all objections, statements, and reservations of rights made with respect thereto;

c.     reviewed the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan;

d.     held the Combined Hearing on August 17, 2020, at 10:00 a.m., prevailing Eastern Time, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.     heard the statements, arguments, and objections made by counsel in respect of Confirmation of the Plan;

f.     overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

g.     taken judicial notice of the papers and pleadings filed with the Court and all orders entered in the Chapter 11 Cases.

**NOW, THEREFORE**, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Combined Hearing establish just cause for the relief granted herein; and upon the record of the Combined Hearing; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**     **Findings and Conclusions**

1.     The findings and conclusions set forth herein and on the record at the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy

Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.      Jurisdiction and Venue**

2.      Venue in the Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b) that, under the United States Constitution, the Court may decide by final order.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  The Court has exclusive jurisdiction to determine whether the Disclosure Statement contains adequate information for purposes of section 1125 of the Bankruptcy Code.

**C.      Eligibility for Relief**

3.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Judicial Notice**

4.      The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly appointed agent, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proferred or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases, including the Combined Hearing.

**E.    Commencement and Joint Administration of the Chapter 11 Cases**

5.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 32], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases. No official committees have been appointed in the Chapter 11 Cases.

**F.    Objections**

6.      Any resolution of objections to Confirmation explained on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.    Burden of Proof & Satisfaction of Section 1129 Requirements**

7.      The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**H.    Notice of the Combined Hearing**

8.      As evidenced by the Affidavits of Service, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Combined Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been provided to:  (a) the U.S. Trustee; (b) all known Holders of Claims and Interests; (c) the agent under the Debtors' prepetition first lien credit agreement and counsel thereto;

(d) the agent under the Debtors' prepetition second lien credit agreement and counsel thereto;

(e) counsel to the ad hoc group of lenders under the Debtors' prepetition first lien credit agreement;

(f) counsel to the ad hoc group of lenders under the Debtors' prepetition second lien credit agreement; (g) the United States Attorney's Office for the Southern District of New York;

(h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission;

(j) the Environmental Protection Agency and all similar state environmental agencies;

(k) the office of the attorney general in the states where the Debtors conduct their business operations; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. Also, the Combined Hearing Notice was published in *The New York Times (National Edition)* and the *Milwaukee Journal Sentinel* on July 14, 2020, in compliance with the Scheduling Order and Bankruptcy Rule 2002(l). Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

## I.    Combined Hearing on the Disclosure Statement and Plan Confirmation

9.    It was appropriate to hold the Combined Hearing on the Debtors' request for approval of the Disclosure Statement and Confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g) of the Bankruptcy Code, Bankruptcy Rule 3018(b), and the Guidelines.

## J.    Disclosure Statement

10.    The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the

Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**K.    Voting Certification**

11.    Only Holders of Claims in Class 3, Class 4, and Class 5 were eligible to vote on the Plan (the "Voting Classes").  The Ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.  Holders of Claims or Interests in Classes 1, 2, 6, 7, 8, 9 and 10 were either Unimpaired or Impaired under the Plan and were not entitled to vote to accept or reject the Plan (collectively, the "Non-Voting Classes").  Thus, Holders of Claims or Interests in the Non-Voting Classes were conclusively presumed to have accepted, or deemed to have rejected, the Plan, as applicable.  Based on the foregoing, and as evidenced by the Voting Certification, Class 3 (First Lien Secured Credit Agreement Claims) and Class 4 (First Lien Credit Agreement Deficiency Claims) have voted to accept the Plan in accordance with the requirements of sections 1124, 1126, and 1129 of the Bankruptcy Code.  Following the modification to the Plan to incorporate the settlement with the Second Lien Ad Hoc Group, certain Holders of Claims in Class 5 (Second Lien Credit Agreement Claims) modified their previous votes to reject the Plan to votes to accept the Plan.

**L.    Solicitation**

12.    As described in the Voting Certification, the solicitation of votes on the Plan complied with the solicitation procedures approved in the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other

applicable rules, laws, and regulations, including, to the extent applicable, the registration requirements under the Securities Act.

13.     As described in the Voting Certification prior to the Petition Date, the Plan, the Disclosure Statement, and the applicable Ballot (collectively, the "Solicitation Package"), and, following the Petition Date, the Combined Hearing Notice, were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable non-bankruptcy law.  Transmission and service of the Solicitation Package and the Combined Hearing Notice was timely, adequate, and sufficient.  No further notice is required.

14.     As set forth in the Voting Certification, the Solicitation Package was distributed to Holders in the Voting Classes that held a Claim against the Debtors, as of June 22, 2020 (the "Voting Record Date").  The establishment and notice of the Voting Record Date were approved by the Scheduling Order.

15.     The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders in the Voting Classes to make an informed decision to accept or reject the Plan, and solicitation complied with section 1126(b) of the Bankruptcy Code.

16.     Under sections 1126(f) and 1126(g) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the Non-Voting Classes, each of which is conclusively presumed to have accepted, or deemed to have rejected, the Plan.

**M.    Plan Supplement**

17.    The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, and no other or further notice is or shall be required.

**N.    Modifications to the Plan**

18.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan in the Plan Supplement or in the Plan attached hereto (collectively, the "Plan Modifications"), as currently on file with the Court, constitute technical or non-material changes that do not materially and adversely affect or change the recovery levels with respect to any particular Class of Claims or Interests, or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the further resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

19.    This Confirmation Order may contain or result in modifications to the Plan that were made to address comments received from various parties in interest, including the Court.  The Plan Modifications are consistent with the provisions of the Bankruptcy Code.  The disclosure of any modifications to the Plan prior to or on the record at the Combined Hearing constitutes due and sufficient notice of any and all Plan Modifications.  The Plan, as modified, shall constitute the Plan submitted for Confirmation.

**O.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

20.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### i.     Proper Classification—Sections 1122 and 1123.

21.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into ten Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.     Specified Unimpaired Classes—Section 1123(a)(2).

22.     Article III of the Plan specifies that Claims in Classes 1, 2, and 6 are Unimpaired under the Plan.  The Plan, therefore, satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii.     Specified Treatment of Impaired Classes—Section 1123(a)(3).

23.    Article III of the Plan specifies the treatment of each Impaired, or potentially Impaired, Class of Claims or Interests under the Plan, including Classes 3, 4, 5, 7, 8, 9 and 10.  The Plan, therefore, satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv.    No Discrimination—Section 1123(a)(4).

24.    Article III of the Plan provides the same treatment for each Claim or Interest within a particular class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### v.    Adequate Means for Plan Implementation—Section 1123(a)(5).

25.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate means for the Plan's implementation, including:  (a) the New Organizational Documents; (b) the Reorganized Debtors' entry into the New Credit Agreement Documents and all related documents; (c) the Reorganized Debtors' issuance of the New Jason Equity; (d) the Reorganized Debtors' entry into the New Revolving Exit Facility Credit Agreement and all related documents; (e) authorizing the Debtors or Reorganized Debtors, as applicable, to take all actions set forth in the Restructuring Steps Memorandum, including the Sale Transaction; (f) authorizing the Debtors or Reorganized Debtors, as applicable, to take all actions necessary to effectuate the Plan; (g) the vesting of Estate assets in the Reorganized Debtors; (h) the preservation and vesting of all Causes of Action in the Reorganized Debtors; (i) the cancellation of notes, instruments, certificates, and other documents evidencing Claims; and (j) the appointment of officers, directors, and managers of the Reorganized Debtors.  The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### vi.    Non-Voting Equity Securities—Section 1123(a)(6).

26.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of nonvoting equity securities.  Article IV of the Plan provides that the New Organizational Documents will prohibit the issuance of any non-voting equity securities under the Plan, to the extent required by section 1123(a)(6) of the Bankruptcy Code.

###### vii.     Directors and Officers—Section 1123(a)(7).

27.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The directors' and officers' identities for the Reorganized Debtors, to the extent known, were disclosed at or before the Combined Hearing and, to the extent not known, will be determined in accordance with the Plan and the New Organizational Documents.  The manner in which the officers and directors were selected is consistent with the interests of Holders of Claims and Interests and public policy.

###### viii.     Claims and Executory Contracts—Section 1123(b)(1)–(2).

28.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Section 5.1 of the Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

###### ix.     Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).

29.     The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  Section 8.2 of the Plan describes certain releases granted by the Debtors (the "Debtor Release"), Section 8.3

of the Plan provides for the release of the Released Parties by the Releasing Parties (the "Third-Party Release"), Section 8.4 of the Plan provides for exculpation for the Exculpated Parties (the "Exculpation"), and Section 8.5 of the Plan provides for an injunction (the "Injunction").  The Court has jurisdiction under sections 1334(a) and 1334(b) of the Judicial Code and authority under section 105 of the Bankruptcy Code to approve each of the Debtor Release, the Third-Party Release, the Exculpation, and the Injunction.  As has been established based upon the evidence presented at the Combined Hearing, such provisions (a) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (b) are appropriately tailored under the facts and circumstances of the Chapter 11 Cases, (c) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (d) confer substantial benefits on the Estates, (e) are fair, equitable, and reasonable, and (f) are in the best interests of the Debtors, the Estates, and parties in interest.  Further, the failure to implement the Debtor Release, Third-Party Release, Exculpation and Injunction would impair the Debtors' ability to confirm and implement the Plan.

30.     The Debtor Release represents a valid exercise of the Debtors' business judgment. The Released Parties provided good and valuable consideration in exchange for the releases— including services, substantial funding, and the consensual reduction or waiver of significant claims, as the case may be—and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

31.     The Third-Party Release is consensual with respect to the Releasing Parties. Specifically, the Ballots sent to all Holders of Impaired Claims in the Voting Class unambiguously stated that the Plan contains the Third-Party Release.

15

32.     The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.  The Exculpation granted under the Plan is reasonable in scope as it does not relieve any party of liability for an act or omission to the extent such act or omission is determined by final order to constitute actual fraud, willful misconduct, or gross negligence.

33.     The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation, and discharge provisions in Article VIII of the Plan.  The Injunction is appropriately tailored to achieve those purposes.

34.     The record of the Combined Hearing is sufficient to support the Debtor Release, Third-Party Release, Exculpation, and Injunction.  Accordingly, based upon the representations of the parties and the evidence proffered, adduced, or presented at the Combined Hearing, the Debtor Release, Third-Party Release, Exculpation, and Injunction are consistent with the Bankruptcy Code and applicable law.

35.     The provisions regarding the preservation of Causes of Action in the Plan (including Section 4.20 of the Plan), including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

> x.     **Additional Plan Provisions—Section 1123(b)(6).**

36.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the

Bankruptcy Code. The Plan's settlement of disputes regarding the treatment of Class 5 under the Plan's prior versions is reasonable, fair and equitable and in the best interests of the Debtors' estates and creditors after taking into account the risks, costs and delay of further litigation and the affected parties' views and was negotiated at arms-length by parties advised by capable professional advisors.

**P.      Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

37.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfy the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

a.    is an eligible debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule, and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Materials and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**Q.      Plan Proposed in Good Faith—Section 1129(a)(3).**

38.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, the process leading to Confirmation of the Plan, and the transactions to be implemented pursuant thereto. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure

that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**R.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

39.      The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**S.      Directors, Officers, and Insiders—Section 1129(a)(5).**

40.      The Reorganized Debtors' initial directors and officers, to the extent known, have been disclosed at or prior to the Combined Hearing and, to the extent not known, will be determined in accordance with the Plan and the New Organizational Documents.  The proposed officers and directors for the Reorganized Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of Holders of Claims and Interests and with public policy.  Accordingly, the Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**T.      No Rate Changes—Section 1129(a)(6).**

41.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases.    The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**U.      Best Interest of Creditors—Section 1129(a)(7).**

42.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement as Exhibit C and the other evidence related thereto in support of the Plan that was proffered or adduced in the Kopa Declaration or at,

prior to, or in connection with the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that each Holder of an Allowed Claim or Interest in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

## V.      Acceptance by Certain Classes—Section 1129(a)(8).

43.     The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Classes 1, 2, and 6 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. All of the Voting Classes, Classes 3, 4, and 5 have voted or have modified their vote to accept the Plan. Holders of Class 9 Jason Common Interests and Holders of Class 10 Jason Preferred Interests receive no recovery pursuant to the Plan and are deemed to have rejected the Plan. Holders of Claims or Interests in Classes 7 and 8 either constitute Unimpaired or Impaired Classes, and are each conclusively presumed to have accepted, or deemed to have rejected, the Plan, respectively. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

## W.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).

44.     The treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims under Article II of the Plan and of Other Priority Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**X.    Acceptance By At Least One Impaired Class—Section 1129(a)(10).**

45.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Certification, Class 3 (First Lien Secured Credit Agreement Claims) and Class 4 (First Lien Credit Agreement Deficiency Claims) have voted to accept the Plan by the requisite number and amount of Claims at each Debtor, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.  Furthermore, following the filing of the Plan, as modified on August 20, 2020, Holders of Claims in Class 5 (Second Lien Credit Agreement Claims) modified their vote to accept the Plan.

**Y.    Feasibility—Section 1129(a)(11).**

46.    The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections attached to the Disclosure Statement as <u>Exhibit E</u> and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Paris Declaration filed in connection with, the Combined Hearing:  (a) are reasonable, persuasive, and credible as of the dates such analysis or evidence was prepared, presented, or proffered; (b) have not been controverted by other evidence; (c) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (d) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**Z.    Payment of Fees—Section 1129(a)(12).**

47.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 2.3 of the Plan provides for the payment of all fees payable by the Debtors under

section 1930(a) of the Judicial Code and any interest thereon, pursuant to 31 U.S.C. §3717.  Such

fees (and interest, if any) shall be payable through the end of the Chapter 11 Cases.

**AA.    Continuation of Employee Benefits—Section 1129(a)(13).**

48.    The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

Section 4.17 of the Plan provides that from and after the Effective Date, the payment of all retiree

benefits, as defined in section 1114 of the Bankruptcy Code, will continue in accordance with

applicable law.

**BB.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).**

49.    Sections 1129(a)(14)-(16) of the Bankruptcy Code do not apply to the Chapter 11

Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit

corporations.

**CC.    "Cram Down" Requirements—Section 1129(b).**

50.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code

because (a) at least one Voting Class of Claims at each Debtor voted to accept the Plan and (b) the

Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Interests

in the Classes that are deemed to reject the Plan.  The Plan may therefore be confirmed despite the

fact that not all Impaired Classes have voted to accept the Plan.

**DD.    Only One Plan—Section 1129(c).**

51.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The

Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

**EE.    Principal Purpose of the Plan—Section 1129(d).**

52.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The

principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of

section 5 of the Securities Act.

**FF.     Good Faith Solicitation—Section 1125(e).**

53.     The Debtors, the Released Parties, the Exculpated Parties, and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**GG.     Satisfaction of Confirmation Requirements**

54.     Based on the foregoing, the Plan satisfies the requirements for Confirmation thereof set forth in section 1129 of the Bankruptcy Code.

**HH.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

55.     Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 9.2 of the Plan.

**II.     Implementation**

56.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements; *provided*, that regardless of whether parties required to sign or execute any Definitive Documents by the Plan or Definitive Documents sign or execute the Definitive Documents (including, for the avoidance of doubt, the New First Lien Credit Agreement Documents, the Stockholders' Agreement, the Registration Rights Agreement, and the New Junior Lien Convertible Credit Agreement

22

Documents), such parties will be deemed to have signed the applicable Definitive Documents, which shall be as binding on such parties as if they had actually signed it.

**JJ.    Disclosure of Facts**

57.    The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**KK.    Good Faith**

58.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Restructuring Transactions.

**BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

**LL.    Disclosure Statement.**

59.    The Disclosure Statement is approved in all respects.

**MM.    Confirmation of the Plan**

60.    The Plan, attached hereto as **Exhibit A**, is confirmed and the Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereafter by the Reorganized Debtors, are hereby approved and authorized.

**NN.    Objections**

61.    All objections and all reservations of rights pertaining to Confirmation of the Plan or approval of the Disclosure Statement that have not been withdrawn, waived, resolved, or settled are overruled on the merits.

**OO.    Deemed Acceptance of the Plan as Modified.**

62.    The Debtors modified the Plan to address concerns raised by parties in interest and made certain nonmaterial clarifications.  The Plan modifications were immaterial and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Accordingly, no additional solicitation or disclosure was required on account of the modifications and all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended (the "Plan Modifications").  No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

**PP.    Omission of Reference to Particular Plan Provisions.**

63.    The failure specifically to include or to refer to any particular article, section, or provision of the Plan or the Plan Supplement in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provisions, it being the intent of the Court that the Plan and any related documents be confirmed and approved in their entirety.

**QQ.    Plan Classifications Controlling**

64.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtor except for voting purposes.

**RR.    No Action Required; Corporate Action**

65.    No action of the respective directors, equity holders, managers, or members of the Debtors or Reorganized Debtors, as applicable, is required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.  To the extent applicable, all matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable.  On or, as applicable, prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, are authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the applicable Reorganized Debtors. Pursuant to applicable state law, the equityholder(s) of Jason Incorporated do not have any dissenter rights.

**SS.    Means for Implementation of the Plan**

66.    The provisions governing the means for implementation of the Plan set forth in Article IV of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to take all actions reasonably necessary to implement the Plan on the terms set forth in Article IV.  Further, upon the Effective Date, the Debtors or Reorganized Debtors, as applicable, are authorized to make the payments or other distributions set forth in Article II and Article III of

the Plan. Notwithstanding any other provision in the Plan, the Plan Supplement, this Confirmation Order, or related Definitive Documents, nothing in the Plan, the Plan Supplement, this Confirmation Order, or related Definitive Documents, including but not limited to Section SSS of this Confirmation Order, shall invalidate or diminish the stipulations, protections, relief, or findings of fact set out in the Cash Collateral Orders,[4] or invalidate or diminish the enforceability or effect of sections 1123 or 1142 of the Bankruptcy Code.

## TT.    Restructuring Transactions

67.    On and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall take all actions necessary or desirable to implement the Restructuring Transactions as set forth in the Plan and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement, which transactions may include, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation,

---

[4]    "Cash Collateral Orders" means the *Interim Order (I) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. 363, (II) Granting Certain Protections to First Lien Secured Parties Pursuant To 11 U.S.C. 361, 362, 363, and 507, and (III) Scheduling A Final Hearing Pursuant to Bankruptcy Rules 4001(b)* [Docket No. 42], and the *Final Order (I) Authorizing Debtors to Use Cash Collateral Pursuant to 11 U.S.C. 363, (II) Granting Certain Protections to First Lien Secured Parties Pursuant To 11 U.S.C. 361, 362, 363, and 507* [Docket No. 131].

formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor; (e) the execution and delivery of the New Organizational Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the New Jason Equity, as set forth herein; (f) the execution and delivery of the New Revolving Exit Facility Credit Agreement Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (g) the execution and delivery of the New Credit Agreement Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); and (h) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

68.    This Confirmation Order shall constitute (a) the approval by this Court of the Restructuring Transactions, the transactions contemplated by the Restructuring Steps Memorandum, the New Organizational Documents, the Stockholders' Agreement, the Registration Rights Agreement, the New Credit Agreement Documents, and the New Revolving Exit Facility Credit Agreement Documents and all transactions contemplated thereby and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized

Debtors in connection therewith, and (b) authorization by this Court for the Reorganized Debtors to enter into and execute, as applicable, the Definitive Documents and such other documents as may be required to effectuate, if applicable, the Restructuring Transactions or the issuance and distribution of the New Jason Equity, provide guarantees and grant the security interests pursuant to the New Organizational Documents and Stockholders' Agreement. Executed versions of the New Organizational Documents and New Stockholders' Agreement shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.

69.    This Confirmation Order shall and shall be deemed, pursuant to sections 363, 365, and 1123 of the Bankruptcy Code, to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

70.    Each Governmental Unit is hereby authorized to accept any and all documents, mortgages, security agreements, financing statements, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, the Definitive Documents, and this Confirmation Order.

**UU.    Vesting of Assets in the Reorganized Debtors**

71.    Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan (including with respect to the Restructuring Transactions, the New Credit Agreement Documents, and the New Revolving Exit Facility Credit Agreement Documents), on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens,

Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**VV.    Cancellation of Instruments, Certificates, and Other Documents**

72.    On the Effective Date, except with respect to the New Credit Facilities, the New Revolving Exit Facility, the Registration Rights Agreement, and the New Jason Equity or as otherwise provided in the Plan:  (a) the obligations of the Debtors under the First Lien Credit Agreement, the Second Lien Credit Agreement, and any Interest in Jason, certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Interest, including, for the avoidance of doubt, any and all shareholder or similar agreements related to Interests in Jason, shall be cancelled and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

73.    Notwithstanding Confirmation, the occurrence of the Effective Date or anything to the contrary herein, (i) such provisions in the First Lien Credit Agreement and the Second Lien Credit Agreement, as applicable, that, by their express terms, survive the termination of the First

Lien Credit Agreement or the Second Lien Credit Agreement, as applicable, shall survive the occurrence of the Effective Date, including the rights of the Agent and the Trustee to expense reimbursement, indemnification, and similar amounts, and (ii) the First Lien Credit Agreement and the Second Lien Credit Agreement shall survive for the purposes of (a) allowing the Agents to make distributions pursuant to the Plan (if any), (b) allowing the Agents to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors, subject to the release and exculpation provisions set forth in Article VIII of the Plan; and (c) notwithstanding the release and exculpation provisions setforth in Article VIII of the Plan, preserving the rights of the Agents to payment of fees, expenses, and indemnification obligations as against the Lenders or any money or property distributable to the Lenders under the First Lien Credit Agreement and Second Lien Credit Agreement, as applicable, including any rights to priority of payment, and any and all rights, claims, and defenses of the Lenders with respect thereto.

**WW.  Issuance and Distribution of New Jason Equity**

74.     On the Effective Date, the Reorganized Debtors shall issue or cause to be issued or reserve for issuance all of the New Jason Equity issued or issuable in accordance with the terms of this Confirmation Order.  The issuance of the New Jason Equity by the Reorganized Debtors for distribution pursuant to the Plan is authorized without the need for further corporate or limited liability company action and without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  All of the New Jason Equity issued or issuable pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  Other than as contemplated through the issuance of the New Jason Equity there shall exist on the Effective Date, no other equity securities, warrants, options, or other agreements to acquire any equity interest in the Reorganized Debtors.

Any holder of New Jason Equity who does not execute the Stockholders' Agreement or the Registration Rights Agreement will be automatically deemed to have accepted the terms of such agreements and to be a party to such agreements without further action.

75.     The New Jason Equity issued under the Plan to Holders of First Lien Secured Credit Agreement Claims and Second Lien Credit Agreement Claims, the New Junior Convertible Term Loans, and the New Jason Equity that may be issued on account of the New Junior Convertible Term Loan shall be exempt from registration requirements under the Securities Act or any similar federal, state, or local law (a) in reliance on section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code) or (b) only to the extent that such exemption under section 1145 of the Bankruptcy Code is not available (including with respect to an entity that is an "underwriter"), pursuant to section 4(a)(2) under the Securities Act and/or Regulation D thereunder.  Except as otherwise provided in the Plan or the governing certificates or instruments or New Organizational Documents (including the Stockholders' Agreement), any and all New Jason Equity issued under the Plan will be freely tradable under the Securities Act by the recipients thereof that, at the time of transfer, (a) is not an "affiliate" of Jason NewCo as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within ninety (90) days of such transfer, (c) has not acquired such securities from an "affiliate" within one year of such transfer and (d) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

76.     Jason Newco may elect, on or after the Effective Date, to reflect any ownership of the New Jason Equity through the facilities of DTC, and Jason Newco need not provide to DTC any further evidence other than the Plan or Confirmation Order with respect to the treatment of such securities under applicable securities laws.  Notwithstanding anything to the contrary in the

Plan, no Entity, including, for the avoidance of doubt, DTC, shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the initial sale and delivery by the issuer to the holders of New Jason Equity is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  The DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Jason Equity is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

77.     The New Board is authorized to establish and implement the Management Incentive Plan as set forth in Section 4.20 of the Plan and consistent with its rights under the New Organizational Documents; *provided* that this Confirmation Order shall not be deemed an approval of any particular Management Incentive Plan or the specific terms thereof.

## XX.   Treatment of Executory Contracts and Unexpired Leases

78.     Entry of the Confirmation Order shall constitute a Court order approving the assumption or assumption and assignment of, as applicable, Executory Contracts or Unexpired Leases as set forth in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that entry of this Confirmation Order shall not constitute a determination by the Court that any contract, instrument, release, indenture, or other agreement (other than the Restructuring Support Agreement) constitutes an Executory Contract or Unexpired Lease, as applicable, under applicable non-bankruptcy law, with the rights of all parties regarding such matter being fully reserved and preserved in all respects, and the Court retains jurisdiction pursuant to Article IX of the Plan to resolve any matters related to Executory Contracts or Unexpired Leases.

79.     Unless otherwise provided in the Plan or in the Confirmation Order, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts

or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control", "anti-assignment", "ipso facto", or similar provisions contained therein), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Without limiting the foregoing, and for the avoidance of doubt, none of the Restructuring Transactions taken by the Debtors or the Reorganized Debtors, as applicable, to effectuate the Plan shall be deemed to trigger any "change of control", "anti-assignment", "ipso facto", or similar provisions in any contract or agreement including any Executory Contract or Unexpired Lease; *provided* that, for a period of thirty (30) calendar days after entry of this Confirmation Order, non-Debtor contract counterparties may object to the assumption and assignment, to the extent applicable, of any such contract or lease, solely pursuant to section 365(c) of the Bankruptcy Code.

80.     For the avoidance of doubt, entry of the Confirmation Order shall constitute a Court order approving the assumption or assumption and assignment of, as applicable, the Indemnification Provisions and such assumption or assumption and assignment will be irrevocable and will survive the effectiveness of the Plan, and the New Organizational Documents shall provide to the fullest extent provided by the law for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, agents of the Debtors, and such current and former directors', officers', and managers' respective Affiliates (each of the foregoing solely in their capacity as such) at least to the same extent as the

Indemnification Provisions, against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in the Plan or this Confirmation Order to the contrary, none of the Reorganized Debtors will amend and/or restate the New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Indemnification Provisions.  Entry of this Confirmation Order shall also constitute a Court order approving Jason NewCo's assumption of the Indemnification Provisions of Jason and such assumption shall be irrevocable.

81.    For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall be deemed approval of any retention, severance, bonus, or compensation plan by the Court pursuant to section 503(c) of the Bankruptcy Code.

**YY.    Provisions Governing Distributions**

82.    The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distribution Agent shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

**ZZ.    Claims Process**

83.    The procedures for resolving contingent, unliquidated, and disputed Claims contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**AAA.  Release, Exculpation, Discharge, and Injunction Provisions.**

84.    The release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety and shall

be immediately effective and binding upon the Effective Date without further action or notice by this Court, any of the Parties subject to such provisions, or any other party.

85.    For the avoidance of doubt, Holders of Claims or Interests that are deemed to accept or deemed to reject the Plan and are therefore not entitled to vote shall not be deemed to grant a release under the Plan and will not be considered "Releasing Parties" or "Released Parties" thereunder.

86.    Notwithstanding any Ballot cast in these Chapter 11 Cases, each of the members of the Second Lien Ad Hoc Group is deemed to have changed its vote to accept the Plan and consented to the releases provided therein.

87.    Notwithstanding the foregoing, with respect to any non-estate fiduciary, the Exculpation shall not apply to any person or entity that has opted out of the Third-Party Release, but only to the extent that any Exculpation exceeds the protections provided such person under section 1125(e) of the Bankruptcy Code.

88.    Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

**BBB.  Release of Liens**

89.    Except as otherwise specifically provided in the Plan, the New Credit Agreement Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the New Credit Agreement Documents), New Revolving Exit Facility Credit Agreement Documents, the Registration Rights Agreement, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is

Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the Agents or any other Holder of a Secured Claim.  In addition, at the sole expense of the Debtors or the Reorganized Debtors, the Agents shall execute and deliver all documents reasonably requested by the Debtors, the Reorganized Debtors, or administrative agent(s) for the New Credit Facilities or the New Revolving Exit Facility to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.

### CCC.  Professional Fee Escrow

90.    On the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals and for no other Entities until all Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

91.     The amount of Professional Fee Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Court have been irrevocably paid in full to the Retained Professionals pursuant to one or more Final Orders of the Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Court or any other Entity.

## DDD.  Terms of Injunctions or Stays

92.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## EEE.  New Credit Facilities

93.     On the Effective Date, the Reorganized Debtors shall enter into the New Credit Agreements and shall execute and deliver the New Credit Agreement Documents, and such documents shall become effective in accordance with their terms.  On and after the Effective Date, the New Credit Agreement Documents, shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.  The terms and

conditions of the New Credit Agreement Documents, if any, shall bind the Reorganized Debtors and each other Entity that enters into such New Credit Agreement Documents as a guarantor.  Any Entity's entry into the New Credit Agreements, if any, shall be deemed as its agreement to the terms of such New Credit Agreement Documents, as amended or modified from time to time following the Effective Date in accordance with its terms.

94.    Confirmation shall be deemed approval of the New Credit Agreement Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees and expenses paid in connection therewith), if any, and, to the extent not approved by the Court previously, the Reorganized Debtors will be authorized to execute and deliver those documents necessary or appropriate to obtain the New Credit Facilities, including the New Credit Agreement Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to enter into the New Credit Agreement Documents, if any.

## FFF.   New Revolving Exit Facility

95.    On the Effective Date, the Reorganized Debtors shall enter into the New Revolving Exit Facility Credit Agreement and shall execute and deliver the New Revolving Exit Facility Credit Agreement Documents, and such documents shall become effective in accordance with their terms.  On and after the Effective Date, the New Revolving Exit Facility Credit Agreement Documents, shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.  The terms and conditions of the New Revolving Exit Facility Credit Agreement Documents, if any, shall bind the Reorganized Debtors and each other Entity that enters into such New Revolving Exit Facility Credit Agreement

Documents as a guarantor.  Any Entity's entry into the New Revolving Exit Facility Credit Agreement, if any, shall be deemed as its agreement to the terms of such New Revolving Exit Facility Credit Agreement Documents, as amended or modified from time to time following the Effective Date in accordance with its terms.

96.    Confirmation shall be deemed approval of the New Revolving Exit Facility Credit Agreement Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees and expenses paid in connection therewith), if any, and, to the extent not approved by the Court previously, the Reorganized Debtors will be authorized to execute and deliver those documents necessary or appropriate to obtain the New Revolving Exit Facility Credit Agreement, including the New Revolving Exit Facility Credit Agreement Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to enter into the New Revolving Exit Facility Credit Agreement Documents, if any.

**GGG. Exemption from Certain Transfer Taxes and Recording Fees**

97.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to Jason NewCo or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or Jason NewCo; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the

grant of collateral as security for any or all of the New Credit Facilities or the New Revolving Exit Facility, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**HHH. Conditions to Effective Date**

98.    The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

### III.    Modifications or Amendments

99.    The provisions governing the modification, revocation, or withdrawal of the Plan set forth in Article X of the Plan shall be, and hereby are, approved in their entirety.

### JJJ.    Retention of Jurisdiction

100.    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety. The Court shall retain exclusive jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Case, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

### KKK.    Immediate Binding Effect

101.    Subject to Article IX of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable non-bankruptcy law.

### LLL.    Payment of Statutory Fees

102.    All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors or Reorganized Debtors, as applicable, for each quarter (including any fraction thereof) until the Chapter 11 Cases are dismissed or closed, whichever occurs first.

### MMM.    Effectiveness of All Actions

103.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders. This Confirmation Order shall constitute all approvals and

consents required, if any, by the laws, rules, and regulations, of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto; *provided,* that regardless of whether such parties execute the Definitive Documents (including, for the avoidance of doubt, the New First Lien Credit Agreement Documents, the Stockholders' Agreement, the Registration Rights Agreement, and the New Junior Lien Convertible Credit Agreement Documents), such parties will be deemed to have signed the Definitive Documents, which shall be as binding on such parties as if they had actually signed it.

## NNN.  Effect of Conflict Between Plan and Confirmation Order

104.    Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, that with respect to any conflict or inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern and control.

## OOO.  Nonseverability of Plan Provisions and Confirmation Order

105.    Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.   Each provision of this Confirmation Order is nonseverable and mutually dependent on each other term of this Confirmation Order and the Plan.

**PPP.  Failure of Consummation**

106.    If the Effective Date does not occur and the Debtors file a notice withdrawing the Plan, then: (a) the Plan and this Confirmation Order will be null and void in all respects; (b) any settlement or compromise embodied in the Plan or this Confirmation Order, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan or this Confirmation Order shall (i) constitute a waiver or release of any Claims, Interests, or Causes of Action, (ii) prejudice in any manner the rights of any Debtor or any other Entity, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity, and all parties shall revert to the status quo as if this Confirmation Order had not been entered.

**QQQ. Post-Confirmation Modifications**

107.    Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner

as may be necessary to carry out the purposes and intent of the Plan, in all respects subject to the consent of the Ad Hoc First Lien Group and upon consultation with the Second Lien Ad Hoc Group. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

### RRR. Provisions Regarding the SEC

108.    Notwithstanding any language to the contrary in the Disclosure Statement, Plan or Confirmation Order, no provision shall (a) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or, (b) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum; *provided* that the foregoing shall in no way limit the protections provided for under 11 U.S.C. § 1125(e).

### SSS. Provisions Regarding Governmental Matters

109.    Notwithstanding any other provision in the Plan, Plan Supplement, this Confirmation Order, or related Definitive Documents, nothing in the Plan, the Plan Supplement, this Confirmation Order, or related Definitive Documents shall discharge, release, or exculpate the Debtors, the Reorganized Debtors, or any non-Debtor from any right, claim, liability, or Cause of Action of any Governmental Unit, or impair the ability of any Governmental Unit to pursue any claim, liability, right, defense, or Cause of Action against any Debtor, Reorganized Debtor, or non-Debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with any Governmental Unit shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' bankruptcy case was never filed and the Debtors and the Reorganized

Debtors shall comply with all applicable non-bankruptcy law.  All claims, rights, causes of action, or defenses of any Governmental Unit, and any liabilities to any Governmental Unit, shall survive these Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or Causes of Action would have been resolved or adjudicated if these Chapter 11 Cases had not been commenced; *provided* that nothing in the Plan, the Plan Supplement, this Confirmation Order, or related Definitive Documents, shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors, as applicable, under applicable non-bankruptcy law with respect to any such claim, liability, or Cause of Action. Without limiting the foregoing, nothing shall: (a) require any Governmental Unit to file any Proofs of Claim or administrative expense claims in these Chapter 11 Cases for any right, claim, liability, defense, or Cause of Action; (b) affect or impair the exercise of any Governmental Unit's police and regulatory powers against the Debtors, the Reorganized Debtors, or any non-Debtor; (c) be interpreted to set cure amounts or to require any Governmental Unit to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, or other interests; (d) affect or impair any Governmental Unit's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors, as applicable, and such rights and defenses are expressly preserved; (e) constitute an approval or consent by any Governmental Unit without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (f) relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy law.

110.    Nothing contained in the Definitive Documents shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors and the Reorganized Debtors, nor shall the Definitive Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan.

111.    Notwithstanding the foregoing, nothing in this Section SSS of this Confirmation Order shall diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code, or of the releases granted by the Debtors or any other non-Governmental Unit.

**TTT.    Provisions Regarding Texas Comptroller**

112.    The provisions of this Section TTT of this Confirmation Order will govern the treatment of the Texas Comptroller of Public Accounts (the "Texas Comptroller") concerning the duties and responsibilities of the Debtors and the Reorganized Debtors relating to all unclaimed property presumed abandoned (the "Texas Unclaimed Property") under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "Texas Unclaimed Property Laws").

113.    On or within thirty (30) days after the Effective Date, the Debtors shall review their books and records and turn over to the Texas Comptroller any known, self-identified Texas Unclaimed Property presumed abandoned before the Petition Date and reflected in property reports delivered by the Debtors to the Texas Comptroller under the Texas Unclaimed Property Laws (the "Reported Unclaimed Property"). With respect to such Reported Unclaimed Property, the Texas Comptroller will not seek payment of any interest or penalty by the Debtors or the Reorganized Debtors.

114.    Notwithstanding section 362 of the Bankruptcy Code, after the Effective Date, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the

Texas Unclaimed Property Laws (the "Texas Unclaimed Property Audit") and pursue recovery of any unremitted Texas Unclaimed Property identified pursuant to the Texas Unclaimed Property Audit. To the extent reasonably practicable, the Debtors and the Reorganized Debtors shall fully cooperate with the Auditors to enable them to accurately and timely perform the Texas Unclaimed Property Audit by making the entities' employees, professionals, books, and records reasonably available during normal business hours.

115. The Debtors' rights and defenses with respect to any allegations and claims asserted against the Debtors arising from or relating to the Texas Unclaimed Property Audit are hereby reserved; provided, however, that upon agreement between the Debtors or the Reorganized Debtors and the Texas Comptroller or a final nonappealable determination by a court or other tribunal with jurisdiction as to the amount of unremitted Texas Unclaimed Property, if any, that is due in connection with the Texas Unclaimed Property Audit, the Debtors or the Reorganized Debtors shall turn over such unremitted Texas Unclaimed Property to the Texas Comptroller.

116. Nothing herein precludes Debtors and Reorganized Debtors from compliance with continued obligations pursuant to Texas Unclaimed Property Laws. Notwithstanding the forgoing, nothing herein shall impede or affect the right or entitlement of the Debtors or Reorganized Debtors (as applicable) to any security, money, or other property remaining unclaimed pursuant to section 347(b) of the Bankruptcy Code or the Plan.

**UUU. Provisions Regarding the Michigan Attorney General**

117. Notwithstanding any provision to the contrary in this Confirmation Order or the Plan, nothing shall:  (a) be construed to discharge, release, limit or relieve the Debtors or a non-Debtor from any liability or responsibility with respect to any Claim arising under the tax laws of the State of Michigan or effect the ability of the State of Michigan to pursue, to the extent allowed

by non-bankruptcy law, any non-debtors for any liabilities that may be related to any tax liabilities owed by the debtors to the State of Michigan; and (b) affect the rights of the State of Michigan to assert setoff and recoupment rights and such rights are expressly preserved, accordingly Article VII of Debtors' plan shall not impair the rights of the State of Michigan.

118.    Furthermore, the Debtors and the Reorganized Debtors agree that they will timely file or cause to be filed all required state tax returns and pay any tax due (including interest) and shall otherwise be subject to the State of Michigan tax laws.

## VVV.  Provisions Regarding The Dow Chemical Company

119.    Notwithstanding the applicability of the discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code otherwise, The Dow Chemical Company and its affiliates (collectively, "Dow")  right to assert any Claims or Causes of Action (including rights of setoff, contribution, indemnification or recoupment) against, and in response to any Claims or Causes of Action that have been or may be asserted against Dow by, the Debtors, the Reorganized Debtors, the Debtors' bankruptcy estates and/or any party acting on their behalf, shall not in any way be compromised, limited, reduced, restricted, enjoined or otherwise affected; provided, however, that Dow shall not be entitled to any recovery from the Debtors or the Reorganized Debtors with respect to any such Claims or Causes of Action under the Plan or otherwise arising or related to any event occurring on or before the Effective Date.

## WWW.       Utility Account

120.    On the Effective Date, the Reorganized Debtors shall have no ongoing obligation to maintain a segregated adequate assurance account (the "Adequate Assurance Account") pursuant to the *Final Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers form Altering, Refusing, or Discontinuing Utility*

*Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV)*
*Granting Related Relief* (the "Final Utility Order"), and the Reorganized Debtors shall have no
further obligations to comply with the Utility Order; *provided* that the Reorganized Debtors shall
not withdraw the funds held in the Adequate Assurance Account until the fees payable by the
Debtors under section 1930(a) of the Judicial Code have been paid in full and are permitted and
directed to deposit funds into the Adequate Assurance Account so that the balance is equal to
$260,000; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay claims
under Section 1930(a) of the Judicial Code, plus interest thereon, if any, shall not be limited nor
be deemed limited to funds held in the Utility Account.

## XXX.   Notice of Confirmation and Effective Date

121.   In accordance with Bankruptcy Rules 2002 and 3020(c), within 10 business days
of the Effective Date, the Reorganized Debtors shall cause the notice of Confirmation (the
"Confirmation Notice"), substantially in the form attached hereto as **Exhibit B**, to be served by
United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties
served with the Combined Hearing Notice; *provided* that no notice or service of any kind shall be
required to be mailed or made upon any Entity to whom the Debtors mailed a Combined Hearing
Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no
forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or
Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that
Entity's new address.  Mailing of the Confirmation Notice in the time and manner set forth in this
paragraph shall be good, adequate, and sufficient notice under the particular circumstances and in
accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is
necessary.

**YYY.  Applicable Non-Bankruptcy Law**

122.    The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**ZZZ.   Waiver of Requirement to Hold a Section 341(a) Meeting**

123.    As of the date of this Confirmation Order, the requirement that the U.S. Trustee convene a meeting of creditors pursuant to section 341(a) of the Bankruptcy Code is hereby waived.

**AAAA.        Waiver of Filings**

124.    Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

**BBBB. Stay of Confirmation**

125.    This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

**CCCC.        Final Order**

126.    This Confirmation Order is a Final Order and the period within which an appeal must be filed commences upon the entry hereof.


Dated: August 26, 2020
        White Plains, New York            */s/Robert D. Drain*
                                          _____
                                          THE HONORABLE ROBERT D. DRAIN
                                          UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

**Plan**

## **Exhibit B**

**Confirmation Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| JASON INDUSTRIES, INC. *et al.,*[1] | ) | Case No. 20-22766 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF (I) ENTRY OF ORDER**
**APPROVING THE DISCLOSURE STATEMENT FOR**
**AND CONFIRMING THE JOINT PREPACKAGED PLAN**
**OF REORGANIZATION OF JASON INDUSTRIES, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11**
**OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on [____], 2020, the United States Bankruptcy Court for the Southern District of New York (the "Court"), entered an order [Docket No. [●]] (the "Confirmation Order") approving the *Disclosure Statement for the Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket Nos. 23, 140] (as the same may have been modified, supplemented, and amended, the "Disclosure Statement") and confirming the *Joint Prepackaged Plan of Reorganization of Jason Industries, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket Nos. 22, 139, 208] (as modified, amended, and including all supplements and exhibits thereto, the "Plan")[2] (attached as Exhibit A to the Confirmation Order) of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____].

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order, the Plan, and copies of all documents filed in these chapter 11 cases are available free of charge by visiting https://dm.epiq11.com/case/jason or by calling the Debtors' restructuring hotline at +1 (855)

---

[1]    The last four digits of the Debtors' tax identification numbers, if any, are:  Jason Industries, Inc. (8322); Jason Partners Holdings, Inc. (1977); Jason Holdings, Inc. I (9929); Jason Incorporated (6840); Milsco, LLC (7243); Osborn, LLC (5279); Schaffner Manufacturing Co., Inc. (0894); and Jason International Holdings, Inc. (7730). The location of the Debtors' service address for purposes of these chapter 11 cases is:  777 Westchester Avenue, Suite 101, White Plains, NY 10604.

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

917-3541 (toll free) or +1 (503) 597-7669 (international).  You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at:  http://www.nysb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, and any Holder of a Claim or an Interest and such Holder's respective predecessors, successors, and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: [●], 2020
New York, New York

*/s/ DRAFT*
Jonathan S. Henes, P.C.
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Laura E. Krucks (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Counsel to the Debtors and Debtors in Possession*

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE,
PLEASE CONTACT EPIQ CORPORATE RESTRUCTURING, LLC BY CALLING
+1 (855) 917-3541 (TOLL FREE) OR +1 (503) 597-7669 (INTERNATIONAL)**